UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

JULIE B.,

        Plaintiff,

        -v-                      5:20-CV-977

COMMISSIONER OF
SOCIAL SECURITY,

        Defendant.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

APPEARANCES:                      OF COUNSEL:

OLINSKY LAW GROUP           HOWARD D. OLINSKY, ESQ.
Attorneys for Plaintiff
250 South Clinton Street, Suite 210
Syracuse, NY 13202

SOCIAL SECURITY              MICHAEL L. HENRY, ESQ.
   ADMINISTRATION            Special Ass't U.S. Attorney
Attorneys for Defendant
J.F.K. Federal Building, Room 625
15 New Sudbury Street
Boston, MA 02203

DAVID N. HURD
United States District Judge

## **MEMORANDUM–DECISION & ORDER**

## I. **INTRODUCTION**

On August 21, 2020, plaintiff Julie B.[1] ("plaintiff" or "claimant") filed this action seeking review of the final decision of defendant Commissioner of Social Security ("Commissioner" or "defendant") denying her application for Supplemental Security Income ("SSI") and Disability Insurance Benefits ("DIB") under the Social Security Act (the "Act").

The Commissioner has filed a certified copy of the Administrative Record and both parties have briefed the matter in accordance with General Order 18, which provides that an appeal taken from the Commissioner's final decision denying benefits will be treated as if the parties have filed cross-motions for a judgment on the pleadings.  *See* FED. R. CIV. P. 12(c).

Plaintiff's appeal will be considered on the basis of these submissions without oral argument.

## II. **BACKGROUND**

On July 20, 2017, plaintiff applied for SSI and DIB alleging that her mental health issues, major recurring depression, post-traumatic stress disorder, social anxiety, borderline personality disorder, seizures, pain

---

[1] In accordance with a May 1, 2018 memorandum issued by the Judicial Conference's Committee on Court Administration and Case Management and adopted as local practice in this District, only claimant's first name and last initial will be mentioned in this opinion.

disorder, drug disorder, and a lesion in the left ventricle of her brain had rendered her disabled beginning on August 16, 2016. R. at 48–49, 63–64.[2]

Plaintiff's claims were denied on September 18, 2017. R. at 78–79. At her request, a hearing was held before Administrative Law Judge ("ALJ") John P. Ramos on May 21, 2019. *Id.* at 1345–64.[3] Plaintiff, represented by attorney Howard Olinsky and non-attorney representative Terry E. Schmidt, appeared in person and testified. *Id.*

On June 4, 2019, the ALJ issued a written decision denying plaintiff's application for benefits. R. at 15–29. This decision became the final decision of the Commissioner on June 22, 2020, when the Appeals Council denied plaintiff's request for review. *Id.* at 1–3.

## III. **LEGAL STANDARD**

The Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).

---

[2] Citations to "R." refer to the Administrative Record. Dkt. Nos. 11, 17.

[3] Plaintiff initially appeared at a hearing before the ALJ on February 12, 2019, but the proceeding was adjourned so that she could secure legal representation. R. at 37–47.

To qualify as disabled within the meaning of this definition, the Act requires that a claimant's:

> physical or mental impairment or impairments [must be] of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. § 423(d)(2)(A).

The ALJ follows a five-step sequential evaluation process to decide whether a claimant is disabled. 20 C.F.R. § 404.1520.[4] At step one, the ALJ determines whether the claimant is currently engaged in "substantial gainful activity." § 404.1520(a)(4)(i). If so, the claimant is not disabled regardless of his medical condition or other factors. § 404.1520(b).

If the claimant is not engaged in substantial gainful activity, then step two requires the ALJ to determine whether the claimant has a "severe" impairment or combination of impairments; *i.e.*, a medically determinable condition that "significantly limits" his physical or mental ability to do basic work activities. § 404.1520(c).

---

[4] Section 404.1520 sets forth the five-step evaluation used for DIB claims. A parallel set of regulations govern SSI applications. *See* 20 C.F.R. § 416.920(a)(4).

If the claimant suffers from a severe impairment or combination of impairments, then step three requires the ALJ to determine whether the impairment(s) meet or equal an impairment specifically listed in Appendix 1 of the Regulations (the "Listings"). § 404.1520(d). If the claimant's severe impairment(s) meet or equal one or more of the Listings, then the claimant is presumed to be disabled regardless of any other factors. § 404.1520(a)(4)(iii).

If the claimant is not presumed disabled under one or more of the Listings, then step four requires the ALJ to assess whether—despite the claimant's severe impairment(s)—he has the residual functional capacity ("RFC") to perform his "past relevant work." § 404.1520(e)–(f). If so, the claimant is not disabled. § 404.1520(a)(4)(iv).

Finally, if the claimant cannot perform his past relevant work, the Commissioner must determine if the claimant's RFC, in combination with his age, education, and work experience, permits the claimant to do any other work in the national economy. § 404.1520(a)(4)(v), (f)–(g).

The burden of proof for the first four steps is on the claimant. *Perez v. Chater*, 77 F.3d 41, 46 (2d Cir. 1996). However, if the claimant shows he cannot perform his past relevant work at step four, the burden shifts to the Commissioner for step five. *Id.*

The Act further provides for judicial review of "any final decision . . . made after a hearing" by the Social Security Administration ("SSA" or the

"Agency"). 42 U.S.C. § 405(g). However, the scope of this review is limited to determining whether (1) the Commissioner applied the correct legal standard to his analysis and, if so, (2) whether the final decision is supported by "substantial evidence." *Selian v. Astrue*, 708 F.3d 409, 417 (2d Cir. 2013) (per curiam) (cleaned up).

"Substantial evidence means more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (cleaned up). "If the reviewing court finds substantial evidence to support the Commissioner's final decision, that decision must be upheld, even if substantial evidence supporting the claimant's position also exists." *Morales v. Berryhill*, 484 F. Supp. 3d 130, 140 (S.D.N.Y. 2020) (citation omitted).

However, this "deferential standard of review for substantial evidence does not apply to the Commissioner's conclusions of law." *Byam v. Barnhart*, 336 F.3d 172, 179 (2d Cir. 2003). Thus, "where there is a reasonable basis for doubting whether the Commissioner applied the appropriate legal standards," the decision should not be affirmed. *Johnson v. Bowen*, 817 F.2d 983, 986 (2d Cir. 1987). This is so regardless of whether or not the decision is otherwise supported by "substantial evidence." *See id.*

## IV. **DISCUSSION**

The ALJ applied the five-step analysis to find that: (1) plaintiff had not engaged in substantial gainful activity since August 16, 2016, the alleged onset date; (2) plaintiff's opioid addiction, depression, post-traumatic stress disorder, borderline personality disorder, anxiety disorder, history of seizures, and migraine headaches were "severe" impairments within the meaning of the Regulations; and that (3) these impairments, whether considered individually or in combination, did not meet or equal any of the Listings. R. at 17–19.

At step four, the ALJ determined that plaintiff retained the RFC to perform "light work" with a series of additional limitations:

> she should avoid working at protected heights or with dangerous machinery. The claimant retains the ability to understand and follow simple instructions and directions. She can perform simple tasks with supervision and independently, and can maintain attention/concentration for simple tasks and regularly attend to a routine and maintain a schedule. The claimant can relate to and interact with coworkers and supervisors to the extent necessary to carry out simple tasks-i.e. she can ask for help when needed[;] accept instructions or criticism from supervisors, handle conflicts with others, state her own point of view, initiate or sustain a conversation, and understand and respond to physical, verbal and emotional social cues associated with simple work. she should avoid work requiring more complex interaction, negotiation, or joint efforts with coworkers to achieve work goals and she can have simple, brief interaction with the public. She can handle reasonable levels of simple work-

> related stress in that she can make decisions directly related to the performance of simple work and handle usual work place changes and interactions associated with simple work. She should work in a position where she is not responsible for the work of or required to supervise others.

R. at 20.

Next, the ALJ determined that his RFC finding precluded plaintiff from performing any of her past relevant work as a cashier or as a kitchen helper. R. at 28. However, after considering plaintiff's age, education, and work experience in light of the RFC, the ALJ found that the Medical-Vocational Guidelines directed a finding of "not disabled." *Id.* Based on this determination, the ALJ concluded that plaintiff was not disabled between August 16, 2016, the onset date, and June 4, 2019, the date of his written decision. *Id.* at 29. Accordingly, the ALJ denied plaintiff's application for benefits. *Id.*

### A. **Plaintiff's Appeal**

Plaintiff contends the mental component of the ALJ's RFC determination is not supported by substantial evidence because he improperly rejected the opinions of Sarah A. Tabi, M.D., plaintiff's treating psychiatrist. Pl.'s Mem., Dkt. No. 19 at 18–22.[5]

---

[5] Pagination corresponds to CM/ECF.

"Where, as here, the ALJ finds at step two that a claimant has one or more 'severe' impairments but determines at step three that the claimant is not presumptively disabled, the ALJ must go on to make an RFC finding, which is an assessment of 'what an individual can still do despite his or her limitations.'" *Tammy Lynn B. v. Comm'r of Soc. Sec.*, 382 F. Supp. 3d 184, 192 (N.D.N.Y. 2019) (quoting *Cox v. Astrue*, 993 F. Supp. 2d 169, 183 (N.D.N.Y. 2012) (McAvoy, J.)).

"In making a residual functional capacity determination, the ALJ must consider a claimant's physical abilities, mental abilities, [and subjective symptomatology], including pain and other limitations which could interfere with work activities on a regular and continuing basis." *Samantha S. v. Comm'r of Soc. Sec.*, 385 F. Supp. 3d 174, 183 (N.D.N.Y. 2019) (citation omitted).

"The claimant's RFC is determined based on all of the relevant medical and other evidence in the record, including the claimant's credible testimony, objective medical evidence, and medical opinions from treating and consulting sources." *Nedzad O. v. Comm'r of Soc. Sec.*, –F. Supp. 3d–, 2021 WL 6015004, at *5 (N.D.N.Y. Dec. 21, 2021) (quoting *Rivera v. Comm'r of Soc. Sec.*, 368 F. Supp. 3d 626, 640 (S.D.N.Y. 2019). "In practice, administrative law judges rely principally on medical source opinion and subjective testimony when assessing impaired individuals' ability to engage

in work-related activities." *Tammy Lynn B.*, 382 F. Supp. 3d at 192–93 (citation omitted).

Historically, the Regulations divided evidence from medical sources into three categories: (1) treating; (2) acceptable; and (3) other.[6] Under this category-based approach, an opinion from a "treating source" enjoyed special treatment: it received *controlling* weight as long as it was "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] record." *Tammy Lynn B.*, 382 F. Supp. 3d at 193 (citation omitted).

However, on January 18, 2017, the SSA revised the rules regarding the way it evaluates evidence from medical sources.[7] Under the new regime, "no particular deference or special weight is given to the opinion of a treating physician." *Nedzad O.*, 2021 WL 6015004, at *6 (quoting *Quiles v. Saul*, 2021 WL 848197, at *9 (S.D.N.Y. Mar. 5, 2021)).

Instead, an ALJ is now obligated to evaluate the persuasiveness of "all of the medical opinions" based on the same general criteria: (1) supportability;

---

[6] A treating source included a claimant's "own physician, psychologist, or other acceptable medical source" who has provided "medical treatment or evaluation and who has, or has had an ongoing treatment relationship" with the claimant. *Tammy Lynn B.*, 382 F. Supp. 3d at 193 (citation omitted).

[7] The new Regulations apply to claims filed on or after March 27, 2017. Because plaintiff's claim was filed on July 20, 2017, the new Regulations appear to govern this appeal. The parties do not argue otherwise.

(2) consistency with other evidence; (3) the source's relationship[8] with the claimant; (4) the source's area of specialization; and (5) other relevant case-specific factors "that tend to support or contradict a medical opinion or prior administrative medical finding." 20 C.F.R. §§ 404.1520c(c)(1)–(5); 416.920c(c)(1)–(5).

The most important of these factors are supportability and consistency. 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2). Although the Regulations obligate the ALJ to explain how he or she considered these two specific factors, "an explanation for the remaining factors is not required unless the ALJ is deciding among multiple medical opinions of equal support and consistency on the same issue that differ slightly." *Nedzad O.*, 2021 WL 6015004, at \*6 (quoting *Dany Z. v. Saul*, 531 F. Supp. 3d 871, 882 (D. Vt. 2021)).

### a. Dr. Tabi

Dr. Tabi is one of plaintiff's treating psychiatrists. According to an April 9, 2019 medical source statement, Dr. Tabi had treated plaintiff at a series of hour-long office visits that occurred once a month over a two-year period. R. at 1331. This long-term relationship is corroborated by various treatment

---

[8] This "relationship" factor includes (i) the length of the treating relationship; (ii) the frequency of examination; (iii) the purpose of the treating relationship; (iv) the extent of the treating relationship; and (v) whether the source examined the claimant. 20 C.F.R. §§ 404.1520c(c)(3)(i)–(v); 416.920c(c)(3)(i)–(v).

notes in the record, which stretch back to Dr. Tabi's first meeting with plaintiff on July 14, 2017.[9]  *Id*. at 589.

Among other things, Dr. Tabi's April 9, 2019 medical source statement opined that plaintiff was "unable to meet competitive standards" in her ability to (I) complete a normal workday and workweek without interruptions from her symptoms; (J) perform at a consistent pace without an unreasonable number and length of rest periods; (L) accept instructions and respond appropriately to criticism from supervisors; (O) deal with normal work stress; and (Q) interact appropriately with the general public.[10]  R. at 1332.

Dr. Tabi further opined that plaintiff's prescribed treatment "causes daytime drowsiness," and that her psychiatric condition exacerbates her experience of pain and other physical symptoms.  R. at 1333.  In addition, Dr. Tabi opined that plaintiff suffered from repeated episodes of deterioration or decompensation that would cause her to withdraw from "work or work-like settings" and suffered from deficiencies in concentration, persistence, or pace that would cause her to fail to complete tasks in a timely manner, both in a work setting and elsewhere.  *Id.*  Based on these and other limitations, Dr.

---

[9]  Plaintiff treated at Upstate Medical University Hospital with other providers before establishing her relationship with Dr. Tabi.  *See* R. at 521–88.

[10]  The medical source statement explains that a patient who is "unable to meet competitive standards" in a given area is one who "cannot satisfactorily perform this activity independently, appropriately, effectively and on a sustained basis in a regular work setting."

Tabi opined that plaintiff would be off-task "more than 20%" of an 8-hour workday and would be absent from work "more than four days per month." *Id.*

The ALJ examined Dr. Tabi's findings and opinions as part of his narrative discussion of the evidence. R. at 26. As relevant here, the ALJ found that in March of 2019, Dr. Tabi had (1) noted that plaintiff "reported that her symptoms of depression and anxiety were generally well controlled" and (2) indicated that plaintiff's "muscle strength and tone, gait and station, speech, thought process, associations, judgment, memory, attention span, concentration, and fund of knowledge" were all intact. *Id.* Based on these contrary findings, the ALJ concluded that Dr. Tabi's opinion "is unpersuasive, as it is inconsistent with the treatment notes." *Id.*

Plaintiff argues the ALJ should have adopted Dr. Tabi's findings and opinions and assessed much more severe and/or disabling mental limitations as part of his RFC. Pl.'s Mem. at 18–22. In support of this assertion, plaintiff argues that Dr. Tabi's findings are supported by the opinion of Jeanne A. Shapiro, Ph.D, a psychologist who performed a consultative examination of plaintiff on August 30, 2017. *Id.* at 20 (citing R. at 629).

In plaintiff's view, the ALJ "focused on negative findings concerning [her] though[t] process and physical health" and failed to recognize that time spent volunteering did not "necessarily have any bearing on [her] ability to function

in a work setting under work pressures." Pl.'s Mem. at 20. According to plaintiff, the ALJ should have "ordered an updated psychological consultative examination or sought clarification from Dr. Tabi" before rejecting her more restrictive opinions. *Id*. at 21.

Upon review, these arguments must be rejected. "The ALJ is obligated to develop a reasonably thorough record, which includes filling in any obvious gaps, and to then render a decision by weighing the conflicting evidence using the appropriate legal standards." *Jennifer Rose D. v. Comm'r of Soc. Sec.*, 2020 WL 68615, at *6 (N.D.N.Y. Jan. 7, 2020).

However, since 2012 the Regulations have made clear that an ALJ is not required to recontact a treating source. *See, e.g.*, *Bradley W. v. Comm'r of Soc. Sec.*, 2020 WL 5848833, at *13 (N.D.N.Y. Oct. 1, 2020) (Baxter, M.J.). That makes particular sense in a case like this one, where the ALJ had the benefit of a recent opinion by the treating source. And a review of the ALJ's written decision confirms that he had also reviewed Dr. Tabi's longitudinal treatment notes. R. at 23. Under these circumstances, the ALJ was under no obligation to re-contact Dr. Tabi before making his decision.

Equally important, plaintiff has failed to identify any legal error in the ALJ's analysis of Dr. Tabi's findings and opinions. Plaintiff has offered citations to other evidence in the record, such as Dr. Shapiro's opinions, that in her view tend to support a more restrictive conclusion about plaintiff's

residual functional capacity. But that is not enough to warrant remand. *Tammy Lynn B.*, 382 F. Supp. 3d at 195 ("Plaintiff's disagreement with the ultimate factual determinations that the ALJ drew from this record evidence is not a basis for remand."); *see also Cage v. Comm'r of Soc. Sec.*, 692 F.3d 118, 122 (2d Cir. 2012) (explaining that a reviewing court "defer[s] to the Commissioner's resolution of conflicting evidence").

As the Commissioner explains in detail in her opposition brief, the ALJ relied on the appropriate Regulatory considerations before discounting Dr. Tabi's opinion. Def.'s Mem., Dkt. No. 20 at 17–23. For instance, the ALJ devoted substantial effort to an analysis of Dr. Tabi's treatment notes. R. at 23. The ALJ compared and contrasted the findings and observations recorded in the treatment notes with Dr. Tabi's most recent medical source statement and concluded that the former did not support the relatively severe restrictions set forth in the latter. Def.'s Mem. at 17.

That was a permissible basis on which to discount a treating source's opinion under the prior Regulations, and remains so under the current regime. *Cf. Rusin v. Berryhill*, 726 F. App'x 837, 839 (2d Cir. 2018) (summary order) (affirming the ALJ's refusal to assign controlling weight to a treating source under the prior Regulations where the ALJ reasonably found the "opinion is inconsistent with the [provider's] treatment notes and diagnostic observations" as well as other substantial evidence in the record).

Notably, though, that is not the *only* basis on which the ALJ chose not to rely on Dr. Tabi's opinion.[11] Instead, the ALJ compared and contrasted Dr. Tabi's findings with other evidence in the record, including but not limited to the earlier consultative opinion offered by Dr. Shapiro. R. at 25. Among other things, Dr. Shapiro opined in 2017 that plaintiff had "moderate-marked limitations" in understanding, remembering, or applying complex directions and instructions. *Id*. at 630.

Although the ALJ adopted certain restrictions assessed by Dr. Shapiro in this 2017 opinion, he ultimately chose to reject this moderate-marked finding. R. at 25. But that is not a basis for remand, either. As the Commissioner correctly emphasizes, "[w]eighing medical opinions requires more than merely counting heads." Def.'s Mem. at 21. "Although the ALJ's conclusion may not perfectly correspond with any of the opinions of medical sources cited in his decision, he was entitled to weigh all of the evidence available to make an RFC finding that was consistent with the record as a whole." *Matta v. Astrue*, 508 F. App'x 53, 56 (2d Cir. 2013) (summary order).

---

[11] The Commissioner notes in passing that Dr. Tabi's April 9, 2019 medical source statement was offered in check-the-box format. Def.'s Mem. at 18 (referencing Dr. Tabi's "disabling checkmarks"). The Second Circuit has recently reiterated that an ALJ may *not* discount a treating physician's opinion "based on the naked fact that it was provided in a check-box form." *Colgan v. Kijakazi*, –F. 4th–, 2022 WL 18502, at *5 (2d Cir. Jan. 3, 2022) (vacating ALJ's opinion for further administrative proceedings where the "check-box form opinion was supported by voluminous treatment notes"). For the reasons discussed in this opinion, however, the ALJ in this case did not discount Dr. Tabi's opinion on the basis of its check-box format.

Even assuming the ALJ should have adopted Dr. Shapiro's assessment of moderate-marked limitation in this particular functional area, the ALJ's RFC includes a host of additional limitations that reasonably account for plaintiff's impairments in this area of functioning. R. at 20. "[C]ourts within the Second Circuit have repeatedly held that marked limitations in mental functioning, including a marked limitation in the ability to deal with stress, do not mandate a finding of disability, but can be addressed with additional limitations to a plaintiff's RFC, such as limiting plaintiff to simple, routine and repetitive tasks in a work environment free of fast-paced production requirements." *Kya M. v. Comm'r of Soc. Sec.*, 506 F. Supp. 3d 159, 166 (W.D.N.Y. 2020) (cleaned up).

Plaintiff also suggests the ALJ relied too heavily on the opinion of L. Hoffman, Ph.D, a non-examining psychologist who rendered an opinion relatively early in the review process. *See* Pl.'s Mem. at 19, 22. In plaintiff's view, Dr. Hoffman rendered his opinion during "what appears to be a temporary lessening in the severity of [her] condition." *Id*. at 22.

But as the Commissioner points out, plaintiff's self-reported depression and anxiety scores fluctuated up and down at various times throughout the disability review period. Def.'s Mem. at 25–26. Absent a more compelling showing of sustained or consistent deterioration in plaintiff's condition, it was not legal error for the ALJ to partially rely on Dr. Hoffman's opinion. *See,*

*e.g.*, *Robert J.R. v. Comm'r of Soc. Sec.*, 2021 WL 4437174, at *4 (W.D.N.Y. Sept. 28, 2021) ("[I]t is not error to rely on an opinion that predates additional medical evidence if that evidence does not indicate any material change in the claimant's medical condition or the severity of his symptoms.").

Finally, plaintiff contends that the ALJ should not have relied on her reported activities of daily living, because those findings do not say anything about her "ability to function in a work setting under work pressure." Pl.'s Mem. at 20. This argument must also be rejected. As Judge Baxter recently explained, "[d]aily activities may include the plaintiff's ability to perform work-related functions even though they do not rise to the level of substantial gainful activity." *Harry B. v. Comm'r of Soc. Sec.*, 2021 WL 1198283, at *14 (N.D.N.Y. Mar. 30, 2021).

Thus, while "a claimant need not be an invalid to be found disabled under the Social Security Act," *Balsamo v. Chater*, 142 F.3d 75, 81 (2d Cir. 1998) (cleaned up), consideration of daily activities are fair game when assessing the intensity and persistence of a plaintiff's symptoms, *Coger v. Comm'r of Soc. Sec.*, 335 F. Supp. 3d 427, 436 (W.D.N.Y. 2018).

## IV. **CONCLUSION**

The ALJ applied the correct legal standards and supported his written decision with substantial evidence in the record.

Therefore, it is

ORDERED that

1. The Commissioner's motion for a judgment on the pleadings is GRANTED;

2. Plaintiff's motion for a judgment on the pleadings is DENIED;

3. The Commissioner's final decision is AFFIRMED; and

4. Plaintiff's complaint is DISMISSED.

IT IS SO ORDERED.

Dated: January 6, 2022
        Utica, New York.

David N. Hurd
U.S. District Judge